UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAURICE NEWMAN,

           Plaintiff,

-against-

MITCHELL KATZ (PRESIDENT); BEHDAD
JAMSHAHI (MD); LELAND CHAN (MD),

           Defendants.

1:24-CV-6681 (LLS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

LOUIS L. STANTON, United States District Judge:

    Plaintiff Maurice Newman, who is appearing *pro se*, filed this action asserting that the defendants have violated his federal constitutional rights and seeking damages. He sues: (1) Dr. Mitchell Katz, the President and Chief Executive Officer of NYC Health+Hospitals ("H+H"); (2) Dr. Behdad Jamshahi, a physician employed by H+H at NYC Health+Hospitals/Bellevue ("Bellevue"), a public hospital in New York, New York; and (3) Dr. Leland Chan, another physician employed by H+H at Bellevue. The Court construes Plaintiff's complaint as asserting claims of federal constitutional violations under 42 U.S.C. § 1983, as well as claims under state law, including claims of medical malpractice.

    In an order dated October 29, 2024, the court denied Plaintiff's motion for default judgment. (ECF 16.) In that same order, the court denied as moot Defendants' requests for an extension of time to oppose that motion.[1] (*Id.*) In response, Plaintiff filed a notice of appeal. (ECF 20.) While Plaintiff's appeal was pending, Plaintiff filed a motion and a declaration in

---

[1] The Court notes that counsel for the defendants have appeared, though none of the defendants have been served with a summons and the complaint because the Court has not ordered the issuance of summonses.

support of that motion seeking unspecified relief.[2] (ECF 21 & 22.) In a mandate dated March 7, 2025, the United States Court of Appeals for the Second Circuit dismissed Plaintiff's appeal for lack of appellate jurisdiction. *Newman v. Katz*, No. 24-2998 (2d Cir. Mar. 7, 2025).

By order dated September 10, 2024, the court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth below, the Court dismisses this action, but grants Plaintiff 30 days' leave to replead his claims in an amended complaint.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

---

[2] The Court construes Plaintiff's declaration (ECF 22) as a supplement to the complaint.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.* at 679.

## BACKGROUND

Plaintiff alleges the following in his complaint and declaration: On March 6, 2021, Plaintiff was admitted to Bellevue because he was experiencing a tightening in his chest, wheezing, and shortness of breath that had occurred over a period of three days. Plaintiff was treated by Defendants Chan and Jamshahi; they diagnosed him with "wheezing." (ECF 1, at 8.) "Due to COVID-19 . . . restrictions and NYC hospitals being understaffed and overworked[,] [t]hey really weren't seeing anyone who didn't have a major under line illness such as heart disease etc. For the next couple of years[,] [Plaintiff] had to fight for a primary care provider . . . to conduct a physical [examination]." (*Id.*) He was "granted" a primary care provider on October 13, 2023,[3] who conducted a physical examination of him, which "led to [him] being tested for

---

[3] It is unclear whether Defendant Jamshahi, Defendant Chan, or someone else was assigned as Plaintiff's primary care provider.

3

and diagnosed with sleep apnea" on December 22, 2023.[4] (*Id.*) On February 26, 2024, he had "a pulmonary function test" performed, and on June 17, 2024, "a pulmonary specialist had preliminary blood work done" on him. The blood test "came back [indicating] that [Plaintiff] had restrictive lung disease." (*Id.*) Plaintiff's primary care provider confirmed this diagnosis on July 16, 2024. "The reason why this lawsuit is being filed is because [Plaintiff] gave . . . all of the warning signs of someone who has restrictive lung disease on [March 6, 2021]."[5] (*Id.*)

Defendants Chan and Jamshahi's failure to "schedul[e] [Plaintiff] for any follow[-]up [medical appointment] for pulmonary [testing,] knowing that [Plaintiff] ha[s] a history of asthma and bronchitis[,] and [was] complaining of serious breathing issues, [was] medical malpractice by failure to treat and diagnose." (*Id.*) Such failures to act constitute violations of "points 8 and 9" of the New York State Patients' Bill of Rights and of Plaintiff's right to due process. (*Id.*) "Plaintiff argues that his procedural due process rights were violated by the Defendant[s'] actions for not following policy within the NYS Bill of Patient[s'] rights section[s] 8 and 9." (ECF 22, at 3.) His "procedural due process rights were violated by the Defendant[s] because

---

[4] In the complaint, Plaintiff alleges that the dates of those events were October 13, 2024, and December 22, 2024. (ECF 1, at 8.) In the declaration, however, Plaintiff alleges that the dates of those events were one year earlier, on October 13, 2023, and on December 22, 2023 respectively. (ECF 22, at 1.) Granting Plaintiff's *pro se* submissions the liberal construction that they are due, the Court understands that the dates of those alleged events were October 13, 2023, and December 22, 2023, respectively.

[5] Plaintiff asserts, in his declaration, that, on July 16, 2024, he spoke to his primary care provider about restrictive lung disease. Plaintiff also asserts, in his declaration, that his primary care provider "knew that [Plaintiff] had the disease for months because of the pulmonary function test and [the primary care provider's] status over [Plaintiff's] medical care due to a client patient relationship." (ECF 22, at 2.) Plaintiff further asserts, in his declaration, that "[t]his information would only become known to [him] once [he] had a screenshot from [his] [d]octor notes in [his] NYC My Chart app. Once there[,] there was no diagnosis, prognosis[,] or treatment planned out for [him]." (*Id.*) In addition, Plaintiff asserts that, "[b]efore this time[,] it was believed that [Plaintiff] had mild asthma and bronchitis. As a patient[,] [Plaintiff] believe[s] [that his] rights were violated and malpractice occurred by these failures." (*Id.*)

4

[he] was not properly notified or informed that [he] ha[s] restrictive lung disease by the test results from a pulmonary function test on [February 26, 2024]." (*Id.*) Plaintiff believes that "[i]t is [his] procedural [due process] right as a patient to be informed about the diagnosis, prognosis[,] and treatment per procedural policy of [the] NYS Bill of Patient[s'] Rights." (*Id.*) He states that he "wasn't properly notified or informed about having restrictive lung disease [until July 16, 2024,]" when he should have been informed on June 17, 2024, "when [he] met with [his] pulmonary specialist." (*Id.*)

## DISCUSSION

Plaintiff appears to assert claims, under 42 U.S.C. § 1983, that the defendants violated his federal constitutional rights to both procedural due process and substantive due process by not properly diagnosing him, and by failing to inform him of the proper diagnosis at the earliest possible date, in violation of the New York State Patients' Bill of Rights. He also appears to assert claims under state law arising from the same alleged failures, including claims of medical malpractice.

**A.    Defendant Katz**

The Court must dismiss Plaintiff's claims, under Section 1983, against Defendant Katz. To state a claim under Section 1983, a plaintiff must allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks omitted)). A defendant may not be held liable under Section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights. *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat*

5

*superior*."). Rather, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

Plaintiff alleges nothing to suggest that Katz, the President and Chief Executive Officer of H+H, was directly and personally involved in any of the alleged violations of Plaintiff's federal constitutional rights. The Court therefore dismisses Plaintiff's claims against Katz for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). The Court, however, grants Plaintiff leave to replead his claims under Section 1983 against Katz in an amended complaint in which he alleges how Katz was personally and directly involved in the alleged federal constitutional violations.

**B.    Procedural due process**

To the extent that Plaintiff asserts claims, under Section 1983, that he has been denied his right to procedural due process with regard to violations of the New York State Patients' Bill of Rights, the Court must dismiss those claims. The Due Process Clause of the Fourteenth Amendment protects "against deprivations [of life, liberty, or property] without due process of law." *Rivera-Powell v. N.Y. City Bd. of Elections*, 470 F.3d 458, 464 (2d Cir. 2006) (internal quotation marks and citation omitted); *see Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "[T]hose who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson*, 545 U.S. at 221. "A liberty interest may arise from the [United States] Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Id.*; *see Gudema v. Nassau Cnty.*, 163 F.3d 717, 724 (2d Cir. 1998) ("It is well established that many state-created privileges . . . are not to be taken away without that procedural due process required by the Fourteenth Amendment." (internal quotation marks and citation omitted)). "The fundamental requisite of due process of

6

law is the opportunity to be heard . . . at a meaningful time and in a meaningful manner." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (internal quotation marks and citations omitted). Determining whether the process provided is adequate requires weighing: (1) the private interest affected; (2) the risk of erroneous deprivation and the probable value of further safeguards; and (3) the governmental interest at issue. *See Rivera-Powell*, 470 F.3d at 466 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

A government official's random and unauthorized conduct, including the failure to act, does not violate a person's right to procedural due process if a meaningful post-deprivation remedy is available. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1986); *Parratt v. Taylor*, 451 U.S. 527, 540-43 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996); *David v. N.Y.P.D. 42nd Precinct Warrant Squad*, No. 1:02-CV-2581 (DC), 2004 WL 1878777, at *5 (S.D.N.Y. Aug. 23, 2004) (discussion in the "failure-to-act" context); *Humpherys v. Nager*, 962 F. Supp. 347, 355 n.10 (E.D.N.Y. 1997) (same). Thus, a claim under Section 1983 asserting that a government official has deprived a person of a liberty interest is not cognizable in a federal district court if state law provides an adequate remedy for the deprivation of that interest. *See Zinermon v. Burch*, 494 U.S. 113, 127-39 (1990); *Hudson*, 468 U.S. at 533. Accordingly, when a plaintiff asserts such a claim, "the federal court's initial inquiry must be whether the state has provided adequate remedies to redress such unlawful acts. If so, there will be no claim before the federal court, whether or not the plaintiff took advantage of the state procedure." *Vialez v. N.Y.C. Hous. Auth.*, 783 F. Supp. 109, 114 (S.D.N.Y. 1991). In addition, "if a plaintiff had an opportunity to contest a defendant's actions but failed to do so, there can be no

claim for violation of his or her procedural due process rights under 42 U.S.C. § 1983." *Id.* at 113.

Courts have noted that the New York State Patients' Bill of Rights, 10 N.Y.C.R.R. § 405.7, does not provide a private right of action for violations of it, *see Abadi v. NYU Langone Health Sys.*, 705 F. Supp. 3d 172, 187 (S.D.N.Y. Dec. 7, 2023) (quoting *Walter v. NYC Health Hops. Corp.*, No. 1:02-CV-0751 (DF), 2005 WL 324242, at *3 (S.D.N.Y. Feb. 9, 2005)); *Herring v. Suffolk Cnty. Police Dep't*, No. 17-CV-5904, 2018 WL 7150387 at *6 (E.D.N.Y. Oct. 19, 2018), *report & recommendation adopted*, 2019 WL 402859 (E.D.N.Y. Jan. 31, 2019); *Armstrong ex rel. Armstrong v. Brookdale Univ. Hosp. & Med. Ctr.*, No. 98-CV-2416, 2002 WL 13222, at *8 (E.D.N.Y. Jan. 3, 2002); *see also Dray v. Staten Island Univ. Hosp.*, 160 A.D. 3d 614, 620 (2d Dep't 2018) ("[The New York State Patients' Bill of Rights] is a regulation promulgated by the New York State Department of Health which requires that patients be afforded certain rights. [It] does apply to hospitals, but no private right of action arising from an alleged violation of that regulation has been recognized. Although a violation of that regulation may be cited in support of a medical malpractice cause of action based upon a violation of a standard of care, a violation of that regulation does not give rise to an independent private right of action."); *cf. Abadi*, 705 F. Supp. 3d at 187 (holding, after noting that the New York State Patients' Bill of Rights does not appear to provide a private right of action, that, even if it did, such a claim could not be brought against individuals, as that Bill of Rights protects against the actions of hospitals and their operators, not individual employees). Thus, it does not appear that New York law created, in the New York State Patients' Bill of Rights, a liberty interest for a hospital patient, such as Plaintiff.

Even if it did, because a governmental entity – in this case, H+H – cannot predict precisely when a government official's random and unauthorized deprivation of a person's liberty interest will occur, it would be impossible to provide meaningful procedural due process before the deprivation of such a liberty interest. *See, e.g.*, *Hudson*, 468 U.S. at 532-33; *Locurto v. Safir*, 264 F.3d 154, 172 (2d Cir. 2001). Instead, New York law appears to provide a post-deprivation remedy; enforcement of the New York State Patients' Bill of Rights, as a standard of care, can be sought in a state law medical malpractice action brought in a state court, *see Dray*, 160 A.D. 3d at 620, rather than in a Section 1983 action in a federal court.

Here, Plaintiff alleges no facts showing that he has pursued any state law remedies, including state law claims of medical malpractice in a state court, nor any facts showing that such state law remedies are inadequate. The Court therefore dismisses Plaintiff's claims, under Section 1983, that he has been denied his right to procedural due process with regard to violations of the New York State Patients' Bill of Rights for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). The Court, however, grants Plaintiff leave to replead these claims in an amended complaint in which he alleges facts showing: (1) that he has attempted to pursue remedies in the state courts under state law; and (2) why such remedies are inadequate.

C.     **Substantive due process**

Inasmuch as Plaintiff asserts claims, under Section 1983, that the defendants violated his right to substantive due process because of their alleged failures, as specified above, the Court must also dismiss those claims. The United States Constitution does not require a government official to protect an individual from harm. *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 755-56 (2005); *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-97 (1989) ("[T]he Due Process Clauses generally confer no affirmative right to governmental aid,

9

even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual. . . . If the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them."); *see, e.g.*, *Gong v. Sarnoff*, No. 23-CV-0343 (LJL), 2024 WL 3638335, at *7 (S.D.N.Y. Aug. 1, 2024) ("It is settled that the State has no general Due Process obligation to ensure the safety, care, and protection of individuals who are not in its custody." (internal quotation marks and citations omitted)).

There are two recognized exceptions to this general rule: (1) "when [a government official] takes a person into [the government official's] custody and holds him there against his will, the Constitution imposes upon [the government official] a corresponding duty to assume some responsibility for his safety and general well-being," *DeShaney*, 489 U.S. at 199-200; and (2) when a government official affirmatively creates or increases a danger to the plaintiff, *see, e.g.*, *Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008). In both of these contexts, the plaintiff must also show that the government official's "behavior was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Id.* (citation omitted). This last "requirement screens out all but the most significant constitutional violations, 'lest the Constitution be demoted to . . . a font of tort law.'" *Id.* (citation omitted). Thus, any claim, including one akin to medical malpractice, that does not allege facts that also satisfy this last requirement is insufficient to state a claim of a substantive due process violation under Section 1983. *See id.*; *Pena v. DePrisco*, 432 F.3d 98 (2d Cir. 2005) ("[T]he Fourteenth Amendment is not a 'font of tort law.' It does not provide a comprehensive scheme for

10

determining the propriety of official conduct or render all official misconduct actionable." (citation omitted)).

Plaintiff does not provide any facts showing that, at any point during the events alleged in his complaint and declaration, he was held in custody by the defendants, or that the defendants affirmatively created the alleged danger or affirmatively increased the alleged danger to him. He also alleges nothing to suggest that the defendants' actions were so egregious or outrageous that they would shock the contemporary conscience. The Court therefore dismisses Plaintiff's claims of substantive due process violations, under Section 1983, for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). The Court, however, grants Plaintiff leave to replead these claims in an amended complaint in which he allege facts sufficient to show that the defendants violated his right to substantive due process.

## LEAVE TO AMEND GRANTED

Plaintiff proceeds in this matter without the benefit of an attorney. Federal district courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011). Indeed, the United States Court of Appeals for the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state a valid claim under 42 U.S.C. § 1983, the Court grants Plaintiff 30 days' leave to replead his claims in amended complaint, as specified above.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in

11

this order. The effect of that judgment will be: (1) dismissal of all of Plaintiff's claims under Section 1983 for failure to state a claim on which relief may be granted, *see* 28 U.S.C. § 1915(e)(2)(B)(ii); (2) declination of consideration, under the Court's supplemental jurisdiction, of Plaintiff's claims under state law, including any claims of medical malpractice, without prejudice to Plaintiff's asserting such claims in a state court action, *see* 28 U.S.C. § 1367(c)(3); and (3) denial of all pending motions and requests as moot. Defendants need not respond to Plaintiff's allegations until after Plaintiff has filed an amended complaint in response to this order, and, if the Court thereafter orders service on the defendants, after such service has been performed.

## CONCLUSION

The Court dismisses this action for the reasons set forth in this order. The Court, however, grants Plaintiff 30 days' leave to replead his claims in an amended complaint, as specified above.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order. The effect of that judgment will be: (1) dismissal of all of Plaintiff's claims under 42 U.S.C. § 1983 for failure to state a claim on which relief may be granted, *see* 28 U.S.C. § 1915(e)(2)(B)(ii); (2) declination of consideration, under the Court's supplemental jurisdiction, of Plaintiff's claims under state law, including any claims of medical malpractice, without prejudice to Plaintiff's asserting such claims in a state court action, *see* 28 U.S.C. § 1367(c)(3); and (3) denial of all pending motions and requests in this action as moot. Defendants need not respond to Plaintiff's allegations until after Plaintiff has filed an amended complaint in response to this order, and, if the Court thereafter orders service on the defendants, after such service has been performed.

      The City Bar Justice Center ("CBJC") operates the SDNY Federal Pro Se Legal Assistance Project to assist self-represented parties with civil cases in this court. Appointments can be scheduled by phone (212-382-4794), email (fedprosdny@nycbar.org), or by completing the attached intake form. A flyer with details is also attached. The CBJC is a private organization that is not part of the court, and the CBJC's SDNY Federal Pro Se Legal Assistance Project cannot accept filings on behalf of the court. The Court *strongly* recommends that Plaintiff use this resource to draft his amended complaint.

      The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated:   July 29, 2025
           New York, New York

                                                               *Louis L. Stanton*
                                                                  Louis L. Stanton
                                                                      U.S.D.J.